IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JESSICA COFER,<br><br>    Plaintiff,<br><br>v.<br><br>NAVIENT SOLUTIONS, INC. and<br>STUDENT ASSISTANCE CORPORATION,<br><br>    Defendants. | No. 4:16-cv-00058-HEA |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendants Navient Solutions, LLC, formerly known as Navient Solutions, Inc. ("NSI") and Student Assistance Corporation ("SAC") (together, "Defendants"), by and through undersigned counsel, in response to the Motion for Partial Summary Judgment (the "Motion") filed herein by plaintiff Jessica Cofer ("Cofer") state as follows:

**I.      INTRODUCTION**

Cofer's Motion seeks to impose liability on Defendants for alleged violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"). The TCPA prohibits, among other things, calling a cellular telephone through the use of an automated telephone dialing system without the called party's "prior express consent." Calls made without the requisite consent may be subject to statutory damages, in the amount of $500 for negligent violations or up to $1,500 for willful violations. Defendants are engaged in various aspects of handling delinquent student loans. In this action, Cofer asserts that Defendants called repeatedly about her delinquent federal student loans after she revoked the requisite consent and, thus, in

willful violation of the TCPA. As detailed below, however, Cofer is not entitled to summary judgment.

First, as a preliminary matter and prior to ruling on the Motion, the Court should allow Defendants the opportunity to take Cofer's deposition, which is noticed for March 10, 2017. Here, Cofer asserts that she revoked consent during a telephone conversation on September 29, 2015, and that the calls made to her subsequently constitute willful violations of the TCPA. However, Cofer's conversation with the agent was strangely framed in the language of the TCPA and the call ended oddly, with Cofer thanking the agent, even though the agent did not confirm that the calls would cease. Thereafter, Cofer did not follow up on the September 29, 2015 conversation, or ask again for the calls to cease for more than three months, until December 31, 2015.

As discussed below, the United States Supreme Court has held that a statutory violation, without actual harm, does not constitute a "case" or "controversy" sufficient to confer Article III standing. In accordance with the Supreme Court's holding, courts have subsequently found that TCPA plaintiffs lack standing where they manufactured, or contributed to, their claims or sought to maximize the number of calls at issue. Given the circumstances here, at a minimum, Defendants should be permitted to take Cofer's deposition, so as to understand the harm allegedly suffered from the calls, if any.[1]

Second, Cofer is not entitled to summary judgment on the issue of willfulness. Very simply, in the Motion, Cofer asks the Court to apply an incorrect legal standard -- i.e., whether

---

[1] Moreover, even setting aside Defendants' need for Cofer's deposition, courts in the Eighth Circuit consistently refuse to decide the issue of revocation at the summary judgment stage, reasoning that it is an issue of fact for the jury. Defendants are aware of no decision in which an Eighth Circuit court resolved the issue of revocation in favor of a plaintiff on summary judgment.

-3-

Defendants merely intended to perform the actions that violated the statute.  The proper standard, applied in the Eastern District of Missouri, focuses on whether the defendant knew that those actions violated the statute.  There is no evidence of such knowledge in the record and, to the contrary, Defendants take significant measures to ensure that they comply with the TCPA.[2]  Further, based on the facts here, it is clear that any violation of the TCPA would only have resulted from simple error by a single account representative, and, thus, Cofer cannot prevail for this reason, as well.

<u>Finally</u>, even setting aside all of the above, Cofer's claims are barred in part as a matter of law.  The Bipartisan Budget Act of 2015 (the "Budget Act"), effective as of November 2, 2015, amended the TCPA to eliminate the prior express consent requirement for calls "made solely to collect a debt owed to or guaranteed by the United States."  47 U.S.C. 227(b)(1)(A)(iii).  Because Defendants were attempting to contact Cofer with respect to delinquent federal student loans, they have no liability under the TCPA for phone calls after the Budget Act's effective date of November 2, 2015.

Accordingly, on the instant claims, Cofer is not entitled to summary judgment.  The Court should deny the Motion in its entirety.

## II. ARGUMENT

### A. Legal Standard

Summary judgment should be granted only "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).  A

---

[2] And, again, as with revocation, Defendants are aware of no decision in which an Eighth Circuit court decided the issue of willfulness in favor of a plaintiff on summary judgment.

court may not make credibility determinations or engage in any weighing of the evidence at the summary judgment stage. See, e.g., Sandler v. Donley, No. 4:11CV1119 CDP, 2012 U.S. Dist. LEXIS 108000, at *11 (E.D. Mo. Aug. 2, 2012) (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000)). Indeed, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Halbach v. Great-West Life & Annuity Ins. Co., 561 F.3d 872, 881-82 (8th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)).

In addition, "[a]lthough discovery need not be complete before a motion for summary judgment is filed, summary judgment is appropriate only after the nonmoving party has had an adequate opportunity to conduct discovery." Hunsinger v. Gordmans, Inc., No. 4:16 CV 162 DDN, 2016 U.S. Dist. LEXIS 167295, at *13 (E.D. Mo. Dec. 5, 2016) (citing Robinson v. Terex Corp., 439 F.3d 465, 467 (8th Cir. 2006)). "Rule 56 allows a party to request a delay in the court's consideration of a motion for summary judgment upon a good-faith showing that postponement of the ruling would enable it to discover additional evidence that might be relevant to the issue of whether there remains a genuine issue of material fact." Id. (concluding that "an opportunity for further discovery is reasonable before the court rules" on summary judgment).[3]

### B. Cofer Is Not Entitled To Summary Judgment Here.

#### 1. At A Minimum, Defendants Should Be Permitted To Take Cofer's Deposition Before The Court Takes Up This Motion.

The Eastern District of Missouri has held that consumers may orally revoke consent under the TCPA. Buchholz v. Valarity, LLC, 4:13CV362 TIA, 2014 U.S. Dist. LEXIS 159239, at *18 (E.D. Mo. Nov. 12, 2014). Nevertheless, whether a plaintiff's alleged oral revocation

---

[3] In accordance with Federal Rule of Civil Procedure 56(d), Defendants' declaration in support of their request for discovery is filed herewith. (See Declaration of Lisa M. Simonetti, attached hereto as Ex. E.)

actually constitutes a revocation is generally a question of fact for the jury. Id. at *21 ("[T]he Court finds that whether Plaintiff effectively revoked his consent to be called when he told Defendant to 'stop calling' remains a disputed fact."). To revoke consent, a consumer must "clearly express" their desire to no longer receive calls. See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, CG Docket No. 02-278, Declaratory Ruling and Order, FCC 15-72, ¶ 63 (July 10, 2015).

Here, Cofer argues that the September 29, 2015 phone call clearly constitutes a revocation (although the odd, "thank you" ending does not fit that depiction since the agent did not confirm that the calls would stop). However, even if this were true, Defendants are entitled to discovery on the issue of harm allegedly suffered by Cofer as a result of the calls. Id. As noted above, Article III of the Constitution limits federal courts to deciding "cases" and "controversies." Lujan v. Defenders of Wildlife, 504 US 555, 560 (1992). The well-established test for Article III standing requires a plaintiff to demonstrate that he (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Id. at 560-61. Pursuant to settled law, plaintiff has the burden of proving standing. See Lujan, 504 US at 561.

In Spokeo, Inc. v. Robbins, the Supreme Court provided further gloss on the injury-in-fact element. 136 S. Ct. 1540, 1549 (2016). In the context of claims for statutory damages brought under the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq., involving the publication of allegedly inaccurate information about plaintiff by an online service provider, the Supreme Court took up the following issue: whether a plaintiff has standing to sue in federal court based only on an alleged violation of federal law and a prayer for statutory damages -- i.e., without an allegation of actual harm, such as out-of-pocket damages. Spokeo, 136 S. Ct. at 1544-45.

In its decision, the Supreme Court noted that, "to establish injury in fact on such a claim, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is concrete and particularized' and 'actual [and] imminent, not conjectural or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 555).  However, the Supreme Court instructed that a concrete injury is a "real" one; it is "not abstract" and it "actually exist[s]." Spokeo, 136 S.Ct. at 1548. Further, the Supreme Court found that, while Congress may elevate injuries to be legally cognizable by statute, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right." Id. at 1549.  Instead, "Article III standing requires a concrete injury even in the context of a statutory violation." Id.

Following Spokeo, courts have held that, where a TCPA plaintiff welcomes the calls or contributes to the same, the defendant has not violated the plaintiff's legally protected interest so as to result in any injury in fact.  See Stoops v. Wells Fargo Bank, N.A., No. 3:15-83, 2016 U.S. Dist. LEXIS 82380, at *37, *42 (W.D. Pa. June 24, 2016).  Defendants do not suggest in an way that Cofer is a "professional plaintiff" who filed her TCPA action "as a business," as plaintiff did in Stoops. Id. at *40.  However, to the extent that Cofer was aware of the workings of the TCPA (as suggested by her use of the phrase "automated calls to my cell phone") and, for example, simply allowed calls to continue between September 29, 2015 and December 31, 2015 without any real objection, an issue exists as to whether she suffered sufficient harm to confer standing. Thus, Defendants should at a minimum be allowed to take her deposition.

> **2.     As A Matter Of Law And Fact, Cofer Plainly Is Not Entitled To Summary Judgment On The Issue of Willfulness.**

In the Motion, Cofer notes that TCPA case law reflects two approaches to evaluating the issue of willfulness.  One approach requires only that the defendant knew it was making the call,

while the other requires that the defendant knew that its conduct would violate the statute. Relying on decisions outside the Eighth Circuit, Cofer argues that this Court should apply the first approach. The Court should decline to do so.

While the Eighth Circuit has not defined the meaning of "willful" in the context of TCPA claims, case law in this District supports a definition that requires knowledge of violating the statute. In Berger Chiropractic LLC v. Hilltop C&I, Inc., an Eastern District of Missouri case, the court held that plaintiff failed to establish that a TCPA violation was willful or knowing and rejected the plaintiff's request for treble damages. No. 4:16CV00678 AGF, 2016 U.S. Dist. LEXIS 156134 (E.D. Mo. Nov. 10, 2016). In doing so, the court relied on Lary v. Trinity Physician Fin. & Ins. Servs., an Eleventh Circuit decision which defines willful as the defendant having knowledge that "he was performing conduct that violates the statute." 780 F.3d 1101, 1107 (11th Cir. 2015). This approach makes sense as a matter of statutory interpretation -- and common sense -- because, if courts "interpreted the statute to require only that the violator knew he was making a 'call' or sending a fax, the statute would have almost no room for violations that are not 'willful[] or knowing[].'" Id. (citing Harris v. World Fin. Network Nat'l Bank, 867 F. Supp. 2d 888, 895 (E.D. Mich. 2012) ("Such a broad application of 'willful[]' or 'knowing' would significantly diminish the statute's distinction between violations that do not require an intent, and those willful[] and knowing violations that [C]ongress intended to punish more severely.")). Further, no evidence in the record before the Court suggests, much less establishes, that Defendants made calls to Cofer while knowing they were in violation of the TCPA.

Moreover, the only decision that Cofer cites on the issue of willfulness does not support her. In King v. Time Warner Cable, 113 F. Supp. 3d 718 (S.D.N.Y. 2016), defendant mistakenly called plaintiff in an attempt to reach another party. Id. at 726. Plaintiff informed defendant that

-7-

it was calling the wrong number, but the defendant continued to call.  Id.  Plaintiff again informed the defendant about ten days later, but defendant continued to call.  Id.  Nevertheless, and importantly, defendant continued to call even after plaintiff filed the lawsuit.  Id. at 727.  Based on these facts, the court held that a finding of willfulness was appropriate for the calls after the second conversation.  Id.

Here, in contrast, Defendants were calling the correct party -- Cofer -- regarding her delinquent federal student loan debt, which they are required to do under the HEA.  While Defendants continued to call Cofer after the conversation on September 29, 2015, Defendants stopped calling her after the December 31, 2015 conversation (and Cofer filed this action on January 14, 2016).  Accordingly, even under King, Cofer would not establish willfulness.  However, after the September 29, 2015 phone call, the most reasonable interpretation of Defendants' conduct is simple error.  A representative made the correct notation in Cofer's account records after the December 31, 2015 conversation and, in accordance with the policies and procedures that Defendants maintain to ensure compliance with the TCPA, Defendants stopped calling her.  (Resps. of Def. NSI to Pl.'s First Set of Interrogs. No. 7.)  Thus, a genuine issue of fact exists on the issue of willfulness.[4]

Finally, Cofer's remaining arguments are without merit.  For instance, Cofer argues that Defendants' conduct was willful because they knew about the TCPA and the necessity of complying with it.  In support of this argument, Cofer cites McCaskill v. Navient Solutions, Inc., 178 F. Supp. 3d 1281, 1293 (M.D. Fla. 2016), where Defendants were found liable for negligent

---

[4]  See Brown v. Account Control Tech., Inc., No. 0:13-62765-CIV-DIMITROULEAS, 2015 U.S. Dist. LEXIS 180605, at *11-12 (S.D. Fla. Jan. 15, 2015) (denying summary judgment on the issue of willfulness; see also Davis v. Diversified Consultants, Inc., 36 F. Supp. 3d 217, 227 (D. Mass. 2014).

violation of the TCPA.  Notably, the court in McCaskill declined to rule on willfulness and, thus, the decision adds nothing to Cofer's argument here.

### 3. Further, Under the Budget Act, Cofer's TCPA Claims Fail For Calls Made After November 2, 2015.

On November 2, 2015, the President signed the Budget Act into law.  Section 301 of the Budget Act (the "Amendment") provides that autodialed calls are exempt from the TCPA's prior express consent requirement if they are "made solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii).  Here, Cofer proposes to recover for autodialed calls made by Defendants on the Loan after November 2, 2015.  However, very clearly, because these calls took place after the effective date of the Amendment, no prior express consent requirement applied, and Cofer's purported revocation of such consent has no meaning.  See Hassert v. Navient Solutions, Inc., No. 16-cv-243-jdp, dkt. 25 (W.D. Wis. Jan. 5, 2017).

Moreover, the calls made to Cofer are precisely of the type that Congress intended to permit through the Amendment.  For example, in the lead-up to passage of the Budget Act, ED issued a report calling for Congress to "change the law to ensure that servicers can contact borrowers using modern technology."  See "Strengthening the Student Loan System to Better Protect All Borrowers," U.S. Department of Education, October 1, 2015, at p. 16 <available at http://www2.ed.gov/documents/press-releases/strengthening-student-loan-system.pdf>        (last viewed May 4, 2016).  ED argued that:

> If servicers are able to contact a borrower, they have a much better chance at helping that borrower resolve a delinquency or default.  Many student loan borrowers, especially those that may just be graduating, move frequently in addition to no longer having landline phone numbers. As such, it can be difficult for servicers to find a borrower except by using a cell phone number.  Current Federal law prohibits servicers from contacting borrowers on a cell phone number using an auto-dialer unless the borrower has provided explicit consent to be contacted at that number.  With phone numbers changing or being reassigned on a regular basis, it is virtually impossible for servicers to use auto-dialing technology. The President's 2016 Budget proposed amending this law to allow

-9-

<u>the use of automated dialers to contact borrowers to inform them of their federal repayment obligations and benefits like Pay As You Earn, or Rehabilitation, in the case of a defaulted borrower.</u>

<u>Id.</u> (Emphasis added.)  Here, Defendants' efforts to contact Cofer were designed to assist her with repayment options for her federal student loan, which is currently delinquent.  Thus, based on the Amendment and ED's sound, underlying rationale in requesting it, the Court should find that Cofer's claims for phone calls after November 2, 2015 fail.

Furthermore, the Court should reject any contention from Cofer that this outcome somehow changes in light of rulemaking issued by the Federal Communications Commission (the "FCC") on August 11, 2016.  The Budget Act directed the FCC to "prescribe regulations to implement the amendments made" by Section 301 within nine months of enactment.  <u>See</u> Budget Act at § 301(b).  The FCC did just that on August 11, 2016, when it released a Report and Order to implement the Amendment.  <u>See</u> <u>In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, CG Docket No. 02-278, Report and Order, FCC 16-99 (August 11, 2016) (the "August 2016 Order"), attached hereto as Ex. F.  The August 2016 Order appended the FCC's Final Rules implementing the Amendment; however, the Final Rules are not yet effective.  As the August 2016 Order makes clear, because certain of the Final Rules implicate the Paperwork Reduction Act, as a whole, the rules will not become effective "until 60 days after the Commission publishes a Notice in the Federal Register indicating approval of the information collection by the Office of Management and Budget (OMB)."  <u>See</u> August 2016 Order at 24, ¶¶ 59-60.  Therefore, the Final Rules are not in place and, until they are, the Amendment applies, as written.

This is further demonstrated by an examination of the clear and unambiguous language of the Amendment, which states that it became effective on the date it was enacted – November 2, 2015.  Specifically, Section 301(a) of the Budget Act provides:  "Section 227(b) of the

Communications Act of 1934 (47 U.S.C. 227(b)) *is amended*—." (emphasis added).  Section 301(a) does not state that the TCPA will be amended, or that the Amendment takes effect at some time in the future, which Congress certainly could have stated.  In fact, Congress did exactly that with regard to other portions of the Budget Act.  For example, Section 501 of the Budget Act provides that the amendments to 29 USCA § 1306 (relating to premium rates under the Employee Retirement Income Security Program) "*shall apply to plan years beginning after December 31, 2016*."  Budget Act, PL 114-74, 129 Stat 584, § 501 (emphasis added).  Similarly, Section 812 of the Budget Act (pertaining to the Social Security Act, 42 U.S.C. 423(d)(5)) provides:

> The amendment made by subsection (a) shall apply with respect to determinations of disability *made on or after the earlier of—*
>
> (1) *the effective date of the regulations issued by the Commissioner under subsection (b)*; or
>
> (2) *one year after the date of the enactment of this Act*.

Id., § 812 (emphasis added).  Accordingly, Congress had the ability to determine when each provision of the Budget Act would be effective, and it chose to make the Amendment effective immediately, not at some point in the future.

Moreover, in its own guidance issued after November 2, 2015, the FCC itself has acknowledged that the Amendment took effect upon enactment.  See <u>In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991</u>, CG Docket No. 02-278, 2016 WL 2759146, ¶ 4 (F.C.C. May 6, 2016) ("May 6, 2016 Notice").  In Paragraph 4 of the May 6, 2016 Notice, the FCC stated that:

> Section 227(b)(1)(A) and (B) of the TCPA *now* explicitly do not make it unlawful for anyone to make autodialed, artificial-voice, or prerecorded-voice calls to both wireless phones and residential landline phones, without the prior express consent

-11-

of the called party, if the calls are "made solely to collect a debt owed to or guaranteed by the United States…

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, 2016 WL 2759146, ¶ 4 (F.C.C. May 6, 2016) (emphasis added). Similarly, in Paragraph 5 of the August 2016 Order, the FCC again noted:

> As amended by Section 301 of the Budget Act, Sections 227(b)(1)(A) and (B) of the TCPA *now* explicitly except from the prior express consent requirement certain autodialed, artificial-voice, and prerecorded-voice calls either to wireless phones or to residential landline phones, if the calls are "made solely to collect a debt owed to or guaranteed by the United States."

In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot Act of 1991, CG Docket No. 02-278, 2016 WL 4250379, ¶ 5 (F.C.C. August 2, 2016) (emphasis added). The word "now" is plain, straightforward and unmistakable.

However, to the extent that Cofer attempts to argue that the August 2016 Order has the retroactive effect of limiting Defendants' rights under the Amendment, she will find no support in the law. A statute or agency rule does not have retroactive effect where it "would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Landgraf v. USI Film Products, 511 U.S. 244, 280 (1994). Because of the inherent unfairness of imposing new burdens after the fact, the ability of an agency to promulgate rules with retroactive effect is limited, and courts only apply statutes or rules retroactively when Congress or the rulemaking agency is clear in its intent. See Id. at 270 ("Since the early days of this Court, we have declined to give retroactive effect to statutes burdening private rights unless Congress had made clear its intent.") Thus, when an agency promulgates a new rule, that rule does not apply retroactively unless "Congress has expressly conferred power on the agency to promulgate rules with retroactive effect and . . . the agency clearly intended for the rule to have retroactive effect." Durable Mfg. Co. v. U.S. Dep't

of Labor, 578 F.3d 497, 502 (7th Cir. 2009); see Bowen v. Georgetown Univ. Hosp., 488 U.S. 204, 208-09, 109 S.Ct. 468, 102 L.Ed.2d 493 (1988) (holding that an administrative agency may not promulgate retroactive rules unless Congress has provided it with express authority to do so and, even if such authority is given, an agency rule will not be accorded retroactive effect unless the agency uses language in the rule expressly requiring that result).

Here, the August 2016 Order imposes additional burdens on loan servicers and businesses engaged in default prevention, like Defendants. It places more stringent requirements by deciding who may make covered calls, limiting the number of federal debt collection calls that may be made and determining who may be called. (August 2016 Order, p. 6). The August 2016 Order, then, could only be applied retroactively if Congress expressly conferred that power on the FCC and the FCC clearly intended the rules to have retroactive effect. Durable Mfg. Co., 578 F.3d at 502; Bowen, 488 U.S. at 208-09.

But, here, no such power was conferred by Congress. Rather, the Budget Act simply states that the FCC shall prescribe regulations to implement the amendments to the TCPA. It does not confer any authority to promulgate retroactive rules. Similarly, even if such power was conferred by Congress through the Budget Act, the August 2016 Order still would not have retroactive effect because the FCC did not clearly state its intent for the FCC Rulemaking to be applied retroactively. Instead, the August 2016 Order does not, in any terms, state that the promulgated rules are to be retroactive and, thus, it may not be so applied.

Finally, Cofer might argue that, even if the Amendment did become effective upon enactment, it does not apply because Defendant's calls were not made "solely to collect" the debt at issue. This cannot be Congress's intended result, however -- under that construction of the

Amendment, Defendants could only take a payment during a collection call, and not offer a borrower a more advantageous option to cure a delinquency.

Instead, in the August 2016 Order, the FCC explained that the phrase "solely to collect a debt" applies to "debts that are delinquent at the time the call is made or to debts that are at imminent risk of delinquency as a result of the terms or operation of the loan program itself." See August 2016 Order at 7, ¶ 14. Elaborating further, the FCC stated that:

> Certain calls to service a debt owed to or guaranteed by the government may be so closely tied to an imminent and non-speculative risk of delinquency as to also be "solely to collect a debt." These calls pertain to specific, time-sensitive events that affect the amount or timing of payments due. Once these time-sensitive events are sufficiently imminent, calls about these events are no longer just about a debt, but are solely about the collection of a debt.

Id. at 7–8, ¶ 16. Thus, given that all of Defendants' phone calls were made to assist Cofer in resolving her delinquency, it is clear that the calls were made "solely to collect" her delinquent debt.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Motion.

-14-

-15-

Dated:  February 10, 2017                    Respectfully submitted,

                                                NAVIENT SOLUTIONS, LLC

                                                By:   /s/ Lisa M. Simonetti
                                                         By Its Attorneys

Lisa M. Simonetti
(admitted pro hac vice)
California Attorney ID# 165996
1925 Century Park East, Suite 1900
Los Angeles, CA 90067
Telephone: 424-204-7700
Facsimile: 424-204-7702
lsimonetti@vedderprice.com

Julie Z. Devine, #58268
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PC.
7700 Bonhomme Avenue, Suite 650
St. Louis, Missouri 63105
Telephone: 314.802.3935
Facsimile: 314.802.3936
julie.devine@ogletreedeakins.com

-16-

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2017, a copy of the foregoing **RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** was filed electronically in the ECF system. Notice of this filing will be sent to the parties of record by operation of the Court's electronic filing system, including Plaintiff's counsel as described below. Parties may access this filing through the Court's system.

>Dominic Pontello, Esq.
>Pontello Law, LLC
>5988 Mid Rivers Mall Dr., Suite 114
>St. Charles, MO 63304
>dominic@pontellolaw.com
>
>Peter F. Barry
>Barry & Helwig, LLC
>2701 University Ave SE, Suite 209
>Minneapolis, MN 55414-3236
>pbarry@lawpoint.com

/s/ Lisa M. Simonetti
Lisa M. Simonetti